UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PORTLAND G.,

                    Plaintiff,                                   **DECISION AND ORDER**

          v.
                                                                1:20-cv-01035-EAW
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Portland G. commenced this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as well as Plaintiff's motion for substitution and the Commissioner's motion for an extension of time. (Dkt. 13; Dkt. 14; Dkt. 15; Dkt. 19). For the reasons discussed below, the motion for substitution is granted (Dkt. 19) and Tamika Jones is substituted as the plaintiff (collectively with Portland G. referred to as "Plaintiff"), the Commissioner's motion for an extension of time is granted (Dkt. 14), and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted in part and the Commissioner's motion (Dkt. 15) is denied.

## BACKGROUND

Plaintiff protectively filed her applications on July 20, 2017.  (Dkt. 12 at 213-25).[1] In her applications, Plaintiff alleged disability beginning March 15, 2017.  (*Id*. at 213, 220). Plaintiff's applications were initially denied on November 20, 2017.  (*Id*. at 93-20).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Roxanne Fuller on July 29, 2019.  (*Id*. at 49-90).  On September 13, 2019, the ALJ issued an unfavorable decision.  (*Id*. at 28-42).  Plaintiff then requested review by the Appeals Council, which the Council denied on June 11, 2020, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 5-9).

On July 7, 2022, Plaintiff's counsel filed a motion to substitute party requesting the Court to issue an order substituting Plaintiff's sister, Tamika Jones, for Plaintiff.  (Dkt. 19). The Commissioner responded indicating that she did not have any objection to the proposed substitution, but deferred to the Court to make its final determination regarding Plaintiff's request.  (Dkt. 21).

## PRELIMINARY MATTERS—EXTENSION AND SUBSTITUTION

The Commissioner has requested an extension of time to file her response to Plaintiff's motion for judgment on the pleadings, with no objection from Plaintiff.  (Dkt. 14).  That motion is hereby granted.

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Plaintiff seeks substitution of her sister Tamika Jones.  (Dkt. 19).  Rule 25(a)(1) of the Federal Rules of Civil Procedure permits substitution of a party for a deceased party if: (A) the claim of a deceased party survives that party's death; (B) the individual seeking to be substituted is a "proper party"; and (C) the motion for substitution is made within "90 days after service of a statement noting the death."  Fed. R. Civ. P. 25(a).

The regulations provide that if an individual dies before any payment of social security benefits is made, such benefits can be made to the child of the deceased individual if there is no surviving spouse left.  42 U.S.C. § 404(d)(2); *see also* 20 C.F.R. § 414.503(b) (if an individual who has been underpaid dies before receiving payment, the underpayment is paid to the living person in the highest order of priority payable first to the surviving spouse, or a child or children of the deceased individual if there is no surviving spouse left); *Perlow v. Comm'r of Soc. Sec.*, No. 10-cv-1661(SLT), 2010 WL 4699871, at *1 (E.D.N.Y. Nov. 10, 2010) ("[T]he Act expressly provides for Plaintiff's Social Security benefits to be paid to his survivors in the event he dies before collecting his underpayments." (internal citation omitted)).  Since Plaintiff was survived by two minor children and was not survived by a spouse at the time of her death, Plaintiff's Title II claim survives her death.  (Dkt. 19-1 ¶¶ 6, 7; Dkt. 19-2).

Plaintiff has also filed a claim for benefits under Title XVI of the Act, which extinguishes when a deceased individual does not have a surviving spouse at the time of her death.  *See* 20 C.F.R. § 416.542(b)(4).  Since Plaintiff did not leave a spouse at the time of her death, her Title XVI claim extinguished upon her death.

As to the timeliness of Plaintiff's motion, the Federal Rules of Civil Procedure provide that the motion for substitution may be made within 90 days of "service of a statement noting the death." Fed. R. Civ. P. 25(a)(1). Here, Plaintiff's counsel first informed the Court of Plaintiff's death by filing a suggestion of death on April 8, 2022. (Dkt. 18). Since Plaintiff filed her motion for substitution on July 7, 2022, the Court finds that it was timely filed.

"A 'proper party' for substitution is either a 'representative of the deceased party's estate' or a 'successor of the deceased party.'" *Perlow*, 2010 WL 4699871, at *2 (*citing Garcia v. City of New York*, No. CV 08-2152(RRM)(MDG), 2009 WL 261365, at *1 (E.D.N.Y. Feb. 4, 2009)). Courts typically look to state law to determine whether a person is a proper "successor or representative" of the decedent. *Garcia*, 2009 WL 261365, at *1 ("Whether a person is a proper 'successor or representative' of the decedent is determined by New York law."). However, "where the plaintiff die[s] destitute, a party who is seeking substitution as a successor and who is not also a representative of the plaintiff's estate need not show that the estate has been distributed before serving as a substitute, as there would not be any estate to distribute." *Herrera-Castro v. Trabajamos Cmty. Head Start, Inc.,* 15 Civ. 9286, 2017 WL 549584, at *1 (S.D.N.Y. Jan. 30, 2017) (internal citations omitted); *see also Perlow,* 2010 WL 4699871, at *2 ("when a plaintiff dies destitute, and his widow is not appointed the representative of his estate, the estate need not be distributed before his widow can serve as his substitute, as there is nothing to distribute"); *Roe v. City of New York,* No. 00 Civ.9062 (RWS), 2003 WL 22715832, at *2 (S.D.N.Y. Nov. 19, 2003) (plaintiff's parents were properly substituted as his distributees when plaintiff died

intestate, did not have a wife or children, when his personal belongings were dispersed among his parents and siblings, and no appointment of an executor or administrator of his estate was made by any court).

Here, Plaintiff's counsel asserts that Plaintiff was destitute at the time of her death, and that her estate did not pass through New York State Surrogate's Court. (Dkt. 19 at 4; Dkt. 19-1 ¶ 10). Plaintiff was survived by two minor children, C.G. and J.G. III, who primarily reside with Tamika Jones, Plaintiff's sister. (Dkt. 19-1 ¶¶ 12, 13, Dkt. 19-3). Counsel submits that Ms. Jones, on behalf of Plaintiff's children, has the highest priority under the Act to be entitled to any underpayment of disability benefits in the event Plaintiff's claim is approved. (Dkt. 19 at 4).

The Act expressly provides for payment to survivors or heirs when the eligible person dies before any past-due benefit is completed pursuant to a specified order of priority. *See* 42 U.S.C. § 404(d). Here, Plaintiff died intestate and left no assets. (Dkt. 19-1 ¶¶ 10, 11). She was not survived by a spouse, but was survived by two minor children, who may be eligible to receive Plaintiff's past-due benefits, if any, as her distributees. 42 U.S.C. § 404(d)(2); *see also* N.Y. E.P.T.L. § 4-1.1 (a)(3). Tamika Jones is requesting to be substituted on behalf of both Plaintiff's minor children to represent Plaintiff's claim. (Dkt. 19-1 ¶ 14). Accordingly, the Court is satisfied that Tamika Jones is a proper party for substitution to represent Plaintiff's claim on behalf of Plaintiff's children. The motion for substitution (Dkt. 19) is granted.

## LEGAL STANDARD FOR PLAINTIFF'S CLAIM

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[2]  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1529), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).  The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the

---

[2]     Because the DIB and SSI regulations mirror each other, and because Plaintiff's SSI claim extinguished upon her death, the Court only cites the DIB regulations.  *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION OF PLAINTIFF'S CLAIM

### I.    The ALJ's Decision

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis and determined that Plaintiff met the insured status requirements of the Act through December 31, 2018.  (Dkt. 12 at 30).  She also determined that Plaintiff had engaged in substantial gainful activity since January 2018 through November 2018; however, there had been a continuous 12-month period during which she did not engage in substantial gainful activity.  (*Id*. at 31).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease, carpal tunnel syndrome, Erb's palsy, obesity, depression, bipolar disorder, PTSD, and anxiety disorder.  (*Id*.).  She also determined that Plaintiff's arthritis in her bilateral knees and ankles, migraines, hypertension, and a history of substance abuse were non-severe impairments.  (*Id*.).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 31-33).  Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work, except that she could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; occasionally

reach in all directions with the right non-dominant arm, and occasionally handle objects and finger with the right non-dominant hand; frequently handle objects and finger with the left dominant hand; be occasionally exposed to moving mechanical parts and unprotected heights and operate a motor vehicle, and perform routine and repetitive tasks.  (*Id*. at 33-34).

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work.  (*Id.* at 40).  At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the occupations of usher, school bus monitor, and furniture rental clerk. (*Id.* at 41).  Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of the ALJ's decision.  (*Id.* at 42).

## II.   <u>Remand for Further Proceedings is Warranted</u>

Plaintiff asks this Court to remand this matter to the Commissioner for further proceedings because the ALJ improperly evaluated the opinion evidence when she formulated her mental and physical RFC, which resulted in an RFC determination that was not supported by substantial evidence. (Dkt. 13-1 at 14-26).  Specifically, Plaintiff argues that the ALJ, among other things, erred in evaluating the opinion evidence related to her upper extremities when she failed to properly consider the opinion of consultative examiner Samuel Balderman, M.D. ("Dr. Balderman"), which she found to be non-persuasive, and relied on a stale opinion of a non-examining expert J. Poss, M.D. ("Dr. Poss"), which was

the only opinion of record that the ALJ found to be persuasive.  (Dkt. 13-1 at 17-26).  The

Court agrees with Plaintiff and finds that remand is warranted.

On November 1, 2017, Plaintiff underwent a consultative examination by Dr.

Balderman, who opined that she had marked limitations in the use of her right arm and

right hand for fine or gross motor work.  (Dkt. 12 at 494-97).  During the examination,

Plaintiff reported that her right shoulder had not been functioning most of her life due to

Erb's palsy that she had been diagnosed with since birth.[3]  Dr. Balderman's examination

revealed that Plaintiff had marked limitations in using the right hand for tying ties or

zipping zippers, and limited grip strength in her right hand.  Although Plaintiff's left upper

extremity did not have any limitations, her right upper extremity was significantly limited

such that her right shoulder abducted 20 degrees, right elbow was fixed at 90 degrees, right

forearm had little range of motion, and her right wrist had 10 degrees of dorsal and palmar

flexion.  (*Id*. at 496).

The ALJ did not find Dr. Balderman's opinion persuasive because she found it to

be inconsistent with the other evidence of record, particularly with the results of the nerve

conduction study, which demonstrated partial improvement of Plaintiff's Erb's palsy, as

---

[3]     Erb's palsy, also known as brachial plexus injury, is a birth "injury of the upper
brachial plexus nerves, causing numbness and loss of motion around the shoulder and an
inability to flex the elbow, lift an arm[,] or bring objects to the mouth," with common
symptoms of numbness or loss feeling in the hand or arm, inability to control or move the
shoulder, arm, whist, or hand, or burning, stinging, or severe pain in the shoulder or arm.
*See      Brachial      Plexus      Injury*, JOHNS      HOPKINS      MEDICINE,
https://www.hopkinsmedicine.org/health/conditions-and-diseases/brachial-plexus-
injuries.  (last visited on Jan. 12, 2023).

well as the statements Plaintiff made during the electrodiagnostic exam of having only mild symptoms in her right arm.  (*Id*. at 39).  The Court finds the ALJ's conclusions erroneous as they were based on her incomplete and selective reading of the record.

Specifically, the ALJ's analysis of the results of the nerve conduction study ignores the purpose of the study and misrepresents its complete findings.  The record shows that Plaintiff underwent the study upon request of her physician to evaluate entrapment neuropathy in her left upper extremity, which explains why Plaintiff primarily identified her symptoms related to the left, instead of the right arm.  (*Id*. at 510).  Even though the study was not conducted to evaluate the functioning of her right upper extremity, Plaintiff indicated that she was, nevertheless, limited in using it due to Erb's palsy that she has had since birth.  (*Id*.).  Although Plaintiff stated that she had only occasional neck pain on her right side, mild sensory loss of the right deltoid, and weakness of upper trunk muscles, such complaints were not insignificant in light of the findings made by Dr. Balderman and Plaintiff's treating providers that support her repeated complaints of the limiting symptoms associated with the functioning of her right shoulder and right hand.  Notably, in addition to Dr. Balderman, who found Plaintiff to be markedly limited in the use of her right upper extremity, Plaintiff's medical providers routinely noted her complaints of having difficulties with lifting, pushing, and pulling with her right arm, as well as having radiating, throbbing, and sharp pain in her right shoulder, and cramping, numbness, and locking of her right hand.  As a result of their examinations, Plaintiff's providers consistently diagnosed her with having right shoulder tendinopathy and right arm contracture, and

found her to have significantly restricted range of motion and strength in the right shoulder. (*Id.* at 360, 364, 368, 373, 375, 392, 572, 575-76, 579-80).

The ALJ also misrepresented the results of the nerve conduction study that demonstrated that in addition to having significant impairment in the functioning of her left median nerves, Plaintiff had significant abnormalities related to her right shoulder and hand, such that her right median motor nerve had reduced amplitude, her right superficial radial sensory nerve was nonresponsive, and she had abnormalities in her right deltoid, biceps, and pronator teres. (*Id.*). The ALJ also misinterpreted the conclusions made by James J. Czyrny, M.D. ("Dr. Czyrny") by primarily focusing on his statement that Plaintiff's right Erb's palsy was in partial recovery, which ignored the rest of Dr. Czyrny's finding that Plaintiff's Erb's palsy was in partial, *but incomplete*, recovery. (*Id.*).

The ALJ also inappropriately relied on Plaintiff's ability to work to discount Dr. Balderman's findings. It has been well-established that when a claimant sustains pain and hardship to pursue important goals in life, such pain cannot be held against her, unless the claimant's conduct clearly demonstrates that she is capable of working. *See Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022) ("[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals . . . it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." (internal citation omitted)). The record here reveals that even though Plaintiff was employed at some point during pendency of her applications, such employment was mainly part-time and short in duration, and insignificant to establish that she was capable of maintaining a full-time job despite her limitations. (Dkt. 12. at 55-58).

Plaintiff testified that her most recent part-time job at Burger King as a cashier lasted a few months and ended as a result of her inability to continue due to her physical impairments. (*Id.* at 55-56).  The record also reveals that Plaintiff baked cakes and stuffed gift baskets for special occasions; however, such employment was sporadic in nature, involved a friend who did most of the work, and did not require Plaintiff to reach overhead with her right arm, carry, or tie the baskets, or lift anything heavier than a bottle of wine, which she presumably could have done with her left dominant arm.  (*Id.* at 57).

The Court is puzzled about how the ALJ was able to reconcile the findings of Dr. Balderman with the opinion of Dr. Poss, which she found persuasive based on its consistency with the record, when Dr. Poss's findings were primarily formed on his review of Dr. Balderman's opinion—the very opinion that the ALJ found to be inconsistent with the record.  (*Id.*).  What is obvious is that to find Dr. Poss's opinion persuasive and to support his finding that Plaintiff's handling and fingering with her right hand was limited, the ALJ selectively used the portion of Dr. Balderman's opinion about Plaintiff's reduced grip strength in her right hand and disregarded the rest of his findings, particularly his most restrictive conclusion that Plaintiff was markedly limited in the use of her right upper extremity.

That is not to say that Dr. Poss inappropriately relied on Dr. Balderman's opinion or that the ALJ's adoption of a portion of Dr. Balderman's opinion was inherently improper.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC

finding that was consistent with the record as a whole." (citation omitted)).  However, by ignoring Dr. Balderman's most restrictive conclusion about Plaintiff's marked limitations and by providing unavailing reasons to justify it, the ALJ cherry picked the least supportive portions of Dr. Balderman's to justify Plaintiff's RFC.  *See Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant."); *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an [ALJ] must have a sound reason for weighting portions of the same-source opinions differently").  This was improper. *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary.").

The most glaring problem with the ALJ's analysis of Dr. Poss's opinion was her failure to resolve an apparent inconsistency in Dr. Poss's findings.  Specifically, the record contains two opinions that Dr. Poss issued on the same day, in one of which he indicated that Plaintiff was limited to performing light one-armed work, while the second opinion did not contain such a restriction but included a limitation for Plaintiff to occasionally perform right front/lateral/overhead reach maneuvers and right gross/fine manipulations. (Dkt. 12 at 102, 501).  Although the ALJ cited the latter opinion in her decision, she

completely ignored the restriction for one-armed work in her analysis.  It is unclear whether it was Plaintiff's right or left arm that Dr. Poss was referring to when he limited Plaintiff to one-armed work, but considering Dr. Balderman's opinion that Plaintiff was markedly limited in the use of her right arm, as well as the rest of the record demonstrating Plaintiff's significant limitations in the use of that arm and hand, it was crucial for the ALJ to resolve the inconsistency between both findings before she relied on Dr. Poss's opinion to formulate Plaintiff's RFC.  *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (the ALJ erred when he misconstrued the record and failed to reconcile the insistency in the notes of plaintiff's physician); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (it was within the province of the ALJ to resolve contradictions between the consultative examination findings and the remainder of the record).

In light of Plaintiff's significant limitations related to her right shoulder and right hand demonstrated by ample records of her treating and examining sources that were consistent with Plaintiff's testimony about the nature of her impairment, it is unclear what basis the ALJ used to determine that Plaintiff was able to perform light work even with additional limitations, which by definition requires frequent lifting or carrying of objects, or pushing and pulling of arm controls with both arms.[4]  *See Buczynski v. Comm'r of Soc.*

---

[4]      "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities."  20 C.F.R § 404.1567(b).

*Sec.,* No. 1:17-cv-01126-MAT, 2019 WL 5540880, at *4 (W.D.N.Y. Oct. 28, 2019) ("courts have found that a physician's assessment that a plaintiff has 'marked' limitations is not necessarily consistent with an RFC limiting the [p]laintiff to 'occasionally' performing those activities").  Because the ALJ's analysis lacks the logical connection between the evidence regarding Plaintiff's inability to properly use her right shoulder and right hand, and her ability to perform light work, the Court is unable to discern how the ALJ arrived at the conclusion that Plaintiff was able to occasionally reach in all directions with her right arm, occasionally handle objects/finger with her right hand, and perform the lifting, carrying, pushing, and pulling requirements of light work.  *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, No. 19-CV-6194-LJV, 2020 WL 4904956, at *3 (W.D.N.Y. Aug. 19, 2020) (the ALJ failed to explain how plaintiff could perform light work when he was moderately to markedly limited in standing, walking, lifting, or carrying); *Jeffery A. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1473 (CFH), 2020 WL 1234867, at *10 (N.D.N.Y. Mar. 13, 2020) (the RFC was not supported by substantial evidence because the ALJ did not provide an explanation how light work was consistent with moderate to marked limitations in climbing, lifting, or carrying); *Buczynski*, 2019 WL 5540880, at *4 (the ALJ erred in failing to provide an explanation how limiting plaintiff to occasional use of his right arm and hand was consistent with the consultative examiner's opinion that plaintiff had marked limitations for reaching, pushing, pulling, and using his hand for fine and gross motor work).

The ALJ's RFC determination related to Plaintiff's left hand is equally concerning in light of the evidence in the record that puts into question Plaintiff's ability to frequently

handle objects and finger with her left hand, and perform the other requirements of light work. (Dkt. 12 at 33-34). Even though the ALJ found Plaintiff's carpal tunnel syndrome of the left hand to be severe and mentioned her struggle with it during pendency of her claims, she did not provide for any limitations associated with Plaintiff's use of her left hand in the RFC and, instead, determined that Plaintiff's left hand carpal tunnel syndrome did not preclude her from working. (*Id*. at 35-38). This is concerning in light of the evidence in the record indicating that due to Plaintiff's right hand Erb's palsy, her left hand became her dominant hand since birth. (*Id*. at 62). Over the years, Plaintiff developed carpal tunnel syndrome in the left wrist, and on November 30, 2017, underwent left trigger finger and left carpal tunnel release procedure. (*Id*. at 515-17). Following the surgery, the numbness in Plaintiff's left hand improved at first, and she did not report any concerns until a year later when she started to complain about the return of the numbness, tingling, and shaking of her left hand. (*Id*. at 517, 587). Subsequently, Plaintiff reported the worsening of her symptoms, as well as the increased pain, intermittent numbness, tingling, pins and needles in her left hand, and was repeatedly assessed with having carpal tunnel syndrome and reduced range of motion in that hand. (*Id*. at 565, 568, 571-72, 575-76, 579, 580, 582, 584). Although she reported improvement of her symptoms following physical therapy on one occasion, Plaintiff continued to demonstrate reduced range of motion in her left wrist and noted that her wrist brace helped only occasionally. (*Id*. at 568, 579).

Considering that both consultative and state agency opinions regarding Plaintiff's physical functioning were issued prior to Plaintiff's carpal tunnel release surgery, and in light of the evidence suggesting deterioration of her symptoms associated with the

impairment following the surgery, the ALJ's determination that Plaintiff could perform light work and frequently handle/finger with her left hand was based on her own interpretation of the record. *See Selian*, 708 F.3d at 419 (the ALJ substituted her own lay opinion in place of medical testimony when she overlooked the record and failed to address the grounds for the diagnoses presented by plaintiff's treating physicians). Although "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record so long as it is supported by substantial evidence," *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022), the ALJ must still construct "an accurate and logical bridge between his recitation of the facts and the conclusions he reached," *Smith,* 2020 WL 4904956, at *3; *see also Maio v. Comm'r of Soc. Sec.*, No. 19-CV-6402-FPG, 2020 WL 5792976, at *5 (W.D.N.Y. Sept. 28, 2020) ("[T]he ALJ failed to rely on any medical opinion that could bridge the gap between clinical findings and specific functional limitations. It is clearly established that 'the ALJ may not interpret raw medical data in functional terms.'" (citation omitted)); *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 294 (W.D.N.Y. 2018) (The RFC analysis was flawed when "the ALJ did not merely disagree with a medical assessment; rather, no acceptable medical source provided an opinion regarding the physical portion of Plaintiff's RFC, and there are no underlying documents supporting any such evaluation." (citation omitted)).

Here, the ALJ misinterpreted Plaintiff's statements regarding improvement of her symptoms and failed to discuss how her determination that Plaintiff was able to frequently handle objects and finger with her left hand was consistent with the evidence of the worsening of Plaintiff's symptoms associated with carpal tunnel syndrome of her left hand

following the surgery.  "[T]he absence of a properly grounded RFC constitutes legal error that requires remand regardless of any underlying raw data." *Smith*, 2020 WL 4904956, at *4.

In sum, in light of the issues identified above, remand is warranted.  On remand, the ALJ is required to properly consider all the evidence related to Plaintiff's right shoulder and hand, as well as the evidence related to Plaintiff's left hand, to determine her RFC. Because the Court has determined that remand of this matter for further administrative proceedings is necessary, it declines to address Plaintiff's remaining arguments.  *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to address Plaintiff's remaining arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined that remand was warranted).

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for substitution (Dkt. 19) and the Commissioner's motion for an extension (Dkt. 14) are granted, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted in part, and the Commissioner's motion for judgment on the pleadings (Dkt. 15) is denied.  The Clerk of Court is directed to amend the caption of the case to reflect the substitution, enter judgment, and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

- 19 -

Dated:      January 30, 2023
              Rochester, New York